# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|  |  |
|---|---|
| WILLIAM F. SILVIOUS,   )  | |
| ) | Civil Action No. 5:09cv00063 |
| *Plaintiff* ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | By:   Hon. James G. Welsh |
| ) | U. S. Magistrate Judge |

Plaintiff, William Silvious, brings this action pursuant to 42 U.S.C. § 405(g) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying his claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended, ("the Act"), 42 U.S.C. § 416. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

On November 30, 2009, the Commissioner filed his Answer along with a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral subsequently entered on December 1, 2009, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Despite the passage of more than six months since the submission of the administrative record, no brief has been filed by the plaintiff addressing the basis for his contention that the Commissioner's decision is not supported by substantial

evidence or why the decision should be otherwise reversed or remanded.[1] Likewise, the plaintiff has made no written request for oral argument.[2]

Given this longstanding briefing failure and the attendant failure of plaintiff's counsel to prosecute the appeal in this case, dismissal of the plaintiff's appeal with prejudice would appear to be warranted. *See Chandler Leasing Corp, v. Lopez*, 669 F.2$^d$ 919 (4th Cir. 1982). The facts of this case, however, suggest that dismissal may be too severe a sanction. *Id*. As the Fourth Circuit wrote in *Reizakis v. Loy*, 490 F.2$^d$ 1132, 1135 (1974):

> A district court unquestionably has authority to grant a motion to dismiss for want of prosecution. Fed. R. Civ. P. 41(b). Indeed, . . . the trial court can take such action on its own motion. But courts interpreting the rule uniformly hold that it cannot be automatically or mechanically applied. Against the power to prevent delays must be weighed the sound public policy of deciding cases on their merits. (Citation omitted). Consequently, dismissal "must be tempered by a careful exercise of judicial discretion." *Durgin v. Graham*, 372 F.2$^d$ 130, 131 (5th Cir. 1967). While the propriety of dismissal ultimately turns on the facts of each case, criteria for judging whether the discretion of the trial court has been soundly exercised have been stated frequently. Rightfully, courts are reluctant to punish a client for the behavior of his lawyer. *Edsall v. Penn Central Transportation Co.*, 479 F.2$^d$ 33 35 (6th Cir. 1973). Therefore, in situations where a party is not responsible for the fault of his attorney, dismissal may be invoked only in extreme circumstances. *Industrial Building Materials, Inc. v. Interchemical Corp.*, 437 F.2$^d$ 1336, 1339 (9th Cir. 1970). Indeed, it has been observed that "the decided cases, while noting that dismissal is

---

[1] Pursuant to paragraph 1 of the court's Standing Order No. 2005-2, the plaintiff in Social Security cases must file, within thirty a days after service of the administrative record, "a brief addressing why the Commissioner's decision is not supported by substantial evidence or why the decision otherwise should be reversed or the case remanded." Standing Order No. 2005-2 was superceded on April 8, 2010 by the court's adoption of a series of Local Rules, including WDVa Gen. Rule 4(c)(1), which similarly directs that the plaintiff *must file* his or her supporting brief within thirty days. Although the plaintiff has not complied with this pleading requirement, his Complaint sets forth with minimal specificity the reasons he believes the Commissioner's final decision is legally deficient. In this instance, therefore, the plaintiff's pleading is deemed to be marginally in compliance with Standing Order No. 2005-2 and WDVa Gen. R. 4(c)(1).

[2] Both paragraph 2 of the court's Standing Order No. 2005-2 and WDVa Gen. R. 4(c)(2) direct that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time his or her brief is filed.

a discretionary matter, have generally permitted it only in the face of a clear record of delay or contumacious conduct by the plaintiff." *Durham v. Florida East Coast Ry. Co*., 385 F.2$^d$ 366, 368 (5th Cir. 1967).

In this case, the defendant has suffered no substantive prejudice; the plaintiff's Complaint sets forth with barely minimal specificity the basis for his appeal, and the administrative record shows that the time period within which the plaintiff must establish DIB eligibility is limited to a single three-month period at the end of 2003. Although there has been significant dilatoriness on the part of his counsel, nothing in the record suggests some personal responsibility by the plaintiff for the briefing failure in this case. Consequently, in this instance it is concluded that dismissal is an inappropriate remedy. After reviewing the administrative record, therefore the following report and recommended disposition is submitted.

**I.    Summary**

The plaintiff in this case was fifty-seven years of age [3] at the time his insured status expired; he attended school only through the seventh grade, [4] and his past relevant work was primarily in retail office furniture sales and management. (R.139,145,140,166-167,170,172-173,700,702.) As outlined in his hearing testimony, the plaintiff's basic contention in this case is that in combination

---

[3] At an advanced age (age 55 or older), the agency recognizes that age significantly affects a person's ability to adjust to other work, and it has special rules for persons of advanced age. 20 C.F.R. § 404.1563(e). *See* 20 C.F.R. § 404.1568(d)(4).

[4] Pursuant to the agency's regulations an individual with a 7th grade through the 11th grade of formal education has a limited education, meaning the individual has an ability in reasoning, arithmetic and language skills, but not enough to allow an individual to do most of the complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R § 404.1564(b)(3).

his physical condition (congestive heart failure) and mental problems (post traumatic stress disorder[5] and depression) rendered him disabled prior to the expiration of his insured status. (R.701-703,708-710,716.)

The medical record, however, contains neither documentation nor even a decisionally significant suggestion that the plaintiff was under a disability as defined by the Act [6] on or before his insured status expired on December 31, 2003. It plainly shows that he was suffering at the time from congestive heart failure of non-listing-level severity. [7] In contrast, it contains no evidence he was suffering from any medically determinable psychological impairment during the relevant period.

Moreover, during the relevant three-month period the medical record provides no objective support either for the plaintiff's statements or the statements of any health care provider either about the disabling intensity of his symptoms or about his alleged attendant limitations.

**II.     Standard of Review**

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for

---

[5] Hereinafter "PTSD."

[6] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

[7] *See* 20 C.F.R. part 404, subpart P, Appendix 1, § 4.02.

entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990); *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard. " *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642). "In reviewing for substantial evidence, [the court should not] undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Commissioner." *Id*. (quoting *Craig*, 76 F.3$^d$ at 589). The ALJ's conclusions of law are, however, not subject to the same deferential view and are to be reviewed *de novo*. *Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000).

**III.   Administrative History**

The record shows that plaintiff protectively filed his application for DIB on April 19, 2005, alleging disability as of October 1, 2003 due to 'pneumonia created by congestive heart failure." (R.97,139-141,165.) In a later submission the plaintiff additionally noted that he had experienced "stress and emotional problems since Vietnam." (R.186.)

His claim was denied both initially and on reconsideration. (R.97,106-108,129-138,189,198-200.) Pursuant to his timely request, an administrative hearing on the plaintiff's application was held

on November 21, 2006 before an administrative law judge ("ALJ"). (R.97,109-114,123-124,128,696-720.) At the hearing, the plaintiff was present; he testified; he was represented by counsel, and vocational testimony was given by Adina Leviton, Ph.D. (R.97,115-122,125-127,696-720.)

In his written decision, dated January 22, 2007, the ALJ noted at the outset that the plaintiff's earnings record showed that he had acquired sufficient quarters of coverage "to remain insured through December 31, 2003" and "must establish" his disability on or before that date "in order to be entitled to a period of disability and disability insurance benefits." (R.94,97,99,105.) Then, utilizing the agency's standard five-step inquiry,[8] the ALJ found that the plaintiff had engaged in no work activity during the period between his alleged onset date of October 1, 2003 and his last insured date, that the plaintiff's medical records showed his heart condition to be a *severe* [9] impairment, that the record did not document any medically determinable psychological impairment during the relevant period, that the plaintiff's heart condition was not of listing-level severity, and

---

[8] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3$^d$ 3d 171, 177 (4th Cir. 2001). It begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry is a determination whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the claimant is disabled; if not, step-four is a consideration of whether the claimant's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

[9] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *See also* 20 C.F.R. § 404.1520(c).

that through his last insured date the plaintiff retained the functional capacity to perform his past relevant work as a retail furniture sales/manager. (R.100-105.)

After the ALJ's issuance of his adverse decision, the plaintiff made a timely request for review by the Appeals Council and submitted additional medical information. (R.9,11,13-93.) This request was subsequently denied (R.4-7), and the ALJ's unfavorable decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

**IV.   Facts**

In rendering his decision, the ALJ reviewed and outlined the plaintiff's relevant medical records, including those from Martinsburg VA Medical Center, from Page Memorial Hospital, from University of Virginia Medical Center and from Dr. Jeffrey Feit, his primary care provider. (R.100.) *Inter alia* these records document the plaintiff's several-day hospital admission in November 2003 after experiencing several weeks of persistent coughing and nasal drainage; at that time a diagnosis of pneumonia was made, and it was noted that his medical history included treatment for a cardiac arrhythmia. (R.219-222,264-270.) The pneumonia diagnosis was confirmed by chest X-ray and CT scan, and his cardiac arrhythmia was demonstrated by electrocardiogram. (*Id*.) Although the plaintiff's pneumonia showed "slow improvement," over the next several months his cough and plural congestion was for a time a chronic problem. (R.201-219.)  Around the same time the plaintiff's abnormal heart rhythm also became chronic in nature and resulted in short-stay hospitalization in January 2004.  An electrocardiogram at that time and another in May 2004

7

reconfirmed the prior diagnosis of atrial fibrillation and an attendant mild heart enlargement. (R.238-260.)

When seen on Dr. Feit's referral at the Heart and Vascular Center at University of Virginia Medical Center ("UVAMC") in March 2004, the plaintiff reported "a constellation of symptoms," including headaches, gastrointestinal disturbance, weakness, shortness of breath, and exertional chest tightness. (R.215,233.) On examination, he was found to be "healthy appearing" and to exhibit no significant medical abnormality other than an "irregularly irregular" pulse. (R.233.)

The plaintiff's medical records from Martinsburg VA Medical Center show that he was diagnosed to be a borderline diabetic in the Fall of 2001 and was also treated at that time for sinus congestion. (R.465, 472-477,482.) Approximately one year later, beginning in December 2002, he was seen and treated on four occasions for bilateral shoulder pain. (R.453-462,464,466-471.) And it was only during the last of these outpatient visits that the plaintiff on July 2, 2003 mentioned experiencing depression and difficulty sleeping. (R.453-457.) It was not until some eighteen months later, when he next sought treatment through the Martinsburg VA Medical Center in January 2005, that PTSD was mentioned as a possible mental health issue. (R.445,447-452.) It was not until the following month (some fourteen months after the plaintiff's date last insured) that he was seen for a psychological evaluation; it was only then that a diagnosis of mild depression was made, and it was only then that the plaintiff was started on an anti-depressant. (R.437-439). [10]

---

[10] Other treatment notes and records from Martinsburg VA Medical Center, Page Memorial Hospital, and several primary care providers were also a part of the administrative record. Those in the record and considered by the ALJ included VA Medical Center records dated between March 2005 and November 2006 (R.281-436,485-487, 489-688). (R.100-101.) Those submitted to the Appeals Council include: Page Memorial Hospital laboratory and

In addition to verifying his limited education, at the administrative hearing the plaintiff outlined his past vocational history primarily as a sales manager in a retail office furniture business and work for a short time as a cook in his wife's restaurant. (R.700,702-704.) He testified about his medical problems, including his heart condition and his several related hospitalizations beginning in late 2003 and continuing into 2004. (R.702-703,710.) Similarly, he described his mental health problems, which included two hospitalizations in the mental ward at Fairfax County Hospital some time after returning from Vietnam for what he believed to have been PTSD, and he described having a depressive condition since November 2003 and PTSD symptoms since August 2004. (R.708-709,714,716,718.) In addition, he described his chronic sleep problems, anxiety, and chronic fatigue that necessitated his having to rest for one and one-half to two hours each day. (R.712-714,716.)

The record in this case at the time of the administrative hearing additionally included medical opinion evidence concerning the plaintiff's residual functional capacity. Based on his review of the relevant medical evidence in July 2005, a state agency medical reviewer concluded that through his last insured date the plaintiff retained the ability to perform work at a medium exertional level. [11]

---

other test results variously dated from 01/07/1999 to 07/10/2001 (R.13-17,59-73) and from 11/17/2003 to 02-12/2004 (R17-58); treatment notes of Drs. Grace Thomas and Nassam Farad variously dated from 07/20/1998 to 07/10/2001 (R.76-90); an office note of Dr. Feit dated 01/29/2007 (R.74-75); a VA Medical Center treatment note dated 05/15/2007 (R.11); and a VA disability certificate dated 01/10/2006 showing that the plaintiff was approved for 70% disability due to PTSD as of 10/24/2005, 20% due to diabetes as of 01/10/2006 and 10% due to hypertension. (R.9). On careful review the records submitted to the Appeals Council do not suggest a basis to change the ALJ's decision; those dated at a time proximate to the plaintiff's last-insured date are cumulative of evidence considered by the ALJ, and those dated more remotely are decisionally not relevant to the plaintiff's condition during the period in question. *See Wilkins v. Sec'y, HHS*, 953 F.2$^d$ 96 (4th Cir. 1991).

[11] *Medium work* involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, he or she also can perform light and sedentary work. *See* 20 C.F.R. § 404.1567(c).

(R.272-279.) Giving him the "benefit of the doubt," three months later a second state agency reviewer concluded the plaintiff could perform work at a light exertional level. (*Id*.) In November 2006, nearly three years after the plaintiff's insured status expired, Dr. Andrew Meyer, a VA Medical Center staff psychiatrist, completed a short medical source statement in which he described the plaintiff' as having "marked" and "extreme" problems in all work-related mental activity areas. (R.690-691.)

## V.  Discussion

### A.

In his decision, the ALJ assessed the plaintiff's medical history during the fourth quarter of 2003 and found it to provide significant evidence of a congestive heart condition. The ALJ took note of the related treatment, which was "mostly" for supraventricular tachycardia; he found the medical record documented treatment of the condition by cardiac ablation, and he concluded the plaintiff's post-treatment status to continue to be a *severe* medical impairment. (R.100.)

Similarly, the ALJ assessed the plaintiff's medical care for pneumonia in the Fall of 2003, including the fact that the condition had cleared with treatment by January 2004, and concluded the plaintiff did not have a *severe* respiratory disorder during the relevant time period. (*Id*.) Focusing on the decisionally relevant period, the ALJ also took note of Dr. Feit's office record for November 17, 2003, which indicated that the plaintiff had hyperthyroidism that was controlled with Synthroid, and concluded this condition also was not a *severe* disorder. (*Id*.)

The ALJ also gave consideration to the plaintiff's testimony about having back pain, experiencing depression, having a sleep disturbance problem, and suffering from anxiety/post traumatic stress disorder at the time his insured status expired. (R.100-101.) As the ALJ noted, however, the medical record contained no diagnostic or treatment evidence to support objectively any of these alleged conditions on or before the date the plaintiff was last insured. (*Id.*) As part of his assessment of the plaintiff's testimony, the ALJ also made specific reference to the plaintiff's hospitalization for mental health treatment in August 2005 at Martinsburg VA Medical Center and to the fact that the plaintiff had current limitations due to his psychological condition. (R.101.) In the absence of any psychological impairment diagnosis, treatment "or even medication" during the relevant period, the ALJ reasonably concluded that the plaintiff had no medically determinable psychological impairment "during the period in question." (*Id.*)

Under the agency's regulations, a person seeking DIB must have a *severe* impairment, or combination of impairments, which "significantly limits [one's] physical or mental ability to do basic work activities," and basic work activities are the abilities and aptitudes necessary to do most jobs, including physical functions such as sitting, standing, seeing, hearing, speaking, understanding, remembering and carrying-out simple instructions, using judgment, responding appropriately to supervision and co-workers, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1520(c) and 404.1521(b)(1)-(6). Conversely, "[a]n impairment is 'not severe' if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984) (emphasis in original).

Reviewing the case now before the court pursuant to the agency standard, the plaintiff's testimony about the nature and severity of his medical and psychological problems at the time his insured status expired is simply not supported by the medical record. (R.102.) Moreover, the ALJ's reliance on the total absence of any objective medical evidence concerning the nature – or even the existence – of several medical conditions about which the plaintiff testified was patently an appropriate and a probative basis upon which the ALJ could – and properly did – base both his assessment of the plaintiff's credibility and his finding that the plaintiff's condition was not of disabling functional severity during the relevant three-month period. *See Mickles v. Shalala*, 29 F.3$^d$ 918, 930 (4th Cir. 1994); *Siler v. Astrue*, 2009 U.S. Dist. LEXIS 56443, *30-34 (WDVa, 2009). The ALJ's opinion, therefore, is supported by substantial evidence.

**B.**

The record in the instant case similarly supports the ALJ's rejection of Dr. Meyer's opinion evidence concerning the plaintiff's disabling mental impairments. On November, 2006 – two months after first examining the plaintiff at the VA Medical Center – Dr. Meyer completed a mental assessment form, in which he described the plaintiff as having "extreme" and "marked" limitations in all mental domains. (R.690-692.) As the ALJ found, this treating source opinion was neither relevant to the period in issue nor supported by any psychological diagnosis or treatment relevant to the period in issue. (R.103-105.)

Although as a general principle the evidence of a treating doctor should be accorded significant decisional weight, "the rule does not require that the testimony be given controlling

weight." *Campbell v. Bowen*, 800 F.2ᵈ 1247, 1250 (4ᵗʰ Cir. 1986). Furthermore, if the opinion is not supported by the objective medical evidence or is inconsistent with other substantial evidence, it may be given "significantly less weight." *Craig v. Chater*, 76 F.3ᵈ 585, 590 (4ᵗʰ Cir. 1996). In the case now before the court, the ALJ explained his decision not to adopt Dr. Meyer's opinion; his reasons are supported by substantial evidence, and and the plaintiff's contrary contention is without merit.

### C.

During the pendency of the plaintiff's DIB claim before the Appeals Council, a letter addressed to the plaintiff's counsel from Dr. Feit was submitted for consideration. Therein, Dr. Feit noted the fact that the plaintiff had been his patient "over the last 4 years;" he outlined the plaintiff's development of pneumonia and rapid atrial fibrillation that "was a challenge to manage" during the Fall of 2003, and he opined that the plaintiff was unable to work "during that time." (R.693.) In addition to the fact that the reported information was cumulative, Dr. Feit's opinion about the plaintiff's ability to work speaks to the ultimate issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(3), SSR 96-5p ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance").

The determination of whether a social security applicant is in fact disabled is a legal conclusion expressly reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). Thus, the portion of Dr. Feit's letter commenting on a legal conclusion reserved for the Commissioner, is neither a medical opinion nor is it entitled to any special significance. *Hayes v. Comm'r of Soc. Sec.*, 2009

U.S. Dist. LEXIS 77680 *15 (WDVa, 2009). This is especially so in the instant case where this treating source's legal conclusion is inconsistent with nearly the entirety of the record. *See Morgan v. Barnhart*, 142 Fed. App'x. 716, 721-22 (4th Cir. 2005); *Jarrells v. Barnhart*, 103 Soc. Sec. Rep. Services 854, 2005 U.S.Dist. LEXIS 7459, *9-10 WDVa. 2005).

**D.**

The recommendation in this case to affirm the Commissioner's final decision should not be read to suggest that the plaintiff suffers from no significant physical or mental impairment. At the time his insured status expired, the objective medical record certainly documents his heart condition. The medical record also documents his development of significant mental health issues beginning in 2006; however, the record also amply supports the ALJ's conclusion that the plaintiff's health-related problems were not totally disabling on or before December 31, 2003, the date he was last insured under Title II of the Social Security Act.

**V.  Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. Dismissal of the plaintiff's appeal pursuant to Rule 41(b) is not warranted by the facts and circumstances of this case;

2. The Commissioner's final decision is supported by substantial evidence;

3. The Commissioner's final decision gave the requisite consideration and weight to the the opinions health care professionals concerning the plaintiff's level of functioning;

4. The finding that the plaintiff's mental impairment was neither a severe condition nor decisionally significant on or before his insured status expired is supported by substantial evidence;

5. Substantial evidence in the record supports the finding that through the plaintiff's last insured date he was not disabled within the meaning of the Act;

6. The plaintiff has not met his burden of proving a disabling condition on or before his date last insured; and

7. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law**

**may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 28th day of June 2010.

      /s/   *James G. Welsh*
United States Magistrate Judge